UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

SHAWN LASYONE

CRIMINAL ACTION

NO. 11-13-BAJ-DLD

## RULING ON MOTION TO SUPPRESS

This matter is presently before the Court on a Motion to Suppress (doc. 16) filed by the defendant, Shawn Lasyone ("Defendant"). Defendant seeks to suppress all drug evidence seized in connection with a search of his residence on January 17, 2010. The Government opposed the motion (doc. 19). An evidentiary hearing was held on October 12, 2011 ("the October 12th hearing"), and the parties have filed post-hearing briefs (docs. 26 and 28). The Court denied Defendant's motion to suppress as to the staleness of the application of the search warrant, and as to the firearm evidence that was uncovered during the search and execution of the warrant (doc. 27). The remaining issue pending before the Court is whether the drug evidence seized from Defendant's residence must be suppressed due to an unjustified search.

On November 21, 2011, the Government filed a motion for reconsideration to reopen the evidentiary hearing as to the suppression of the drug evidence seized (doc. 21). The Court granted the motion (doc. 30), and

held a supplemental evidentiary hearing on December 19, 2011 ("the December 19th hearing").

## FACTS

Deputy Len Starnes ("Deputy Starnes"), Deputy Stephen Hill ("Deputy Hill")[1], and Officer Todd Morris ("Officer Morris")[2] testified on behalf of the Government. The testimony revealed that Defendant's residence was searched on January 17, 2010, pursuant to a search warrant authorized by a judge of the 19th Judicial District Court on January 16, 2010 (Government Ex. "1A" and "1B"). During its execution of the search warrant, law enforcement officers seized, *inter alia*, marijuana and oxycontin ("drug evidence" or "narcotics") from Defendant's residence.

The warrant authorized the search and seizure of a firearm that was reported stolen. Acting on the warrant, the officers located the item believed to be described in the search warrant. However, though the firearm was described with particularity in the search warrant, the serial number of that firearm was not included in the search warrant, and, upon execution of the warrant, officers found multiple firearms in the residence. The drug evidence seized was not described in the search warrant and Officer Morris noted that the warrant was not specifically designated as a "narcotics warrant" (Government Ex. "1B"; the

---

[1] Deputies Starnes and Hill testified at the October 12th hearing.

[2] Officer Morris testified at the December 19th hearing.

December 19th hearing). The Government alleges, *inter alia*, that the officers who executed the search warrant observed the drug evidence in "plain view" on Defendant's kitchen countertop. (Doc. 19-1, p. 2). However, the Court notes that Government Exs. "2A" and "2E", which are photographs depicting the kitchen countertop as it was found during the execution of the search warrant, show that the drug evidence at issue was concealed in a garbage bag and a lunch box, and was, therefore, not visually apparent to the officers. Nevertheless, the Government alleges that as part of the execution of a search warrant, officers were authorized and required to search for the firearm described in the search warrant in any location where a firearm could be concealed, e.g. inside a garbage bag and a lunch box. Moreover, Officer Morris testified that, based on his twenty-two years of experience with the East Baton Rouge Parish Sherriff's Department, he smelled the presence of marijuana in the immediate vicinity of the firearms.

Defendant asserts, *inter alia*, that: (1) the illegal narcotics were not in "plain view"; (2) once the officers located the firearm described in the search warrant, which occurred immediately upon entry into the kitchen, the officers were not authorized to continue searching the residence, and, therefore, the finding of the drug evidence inside a garbage bag and a lunchbox was unconstitutional; and (3) since the narcotics were not described with particularity in the search warrant,

the officers did not have authority to seize the narcotics. For these reasons, he asserts that the evidence of the narcotics should be suppressed.

## DISCUSSION

The Fourth Amendment protects the right to be secure against unreasonable searches. *U.S. v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). As such, generally only items that are described in a search warrant may be seized pursuant to the Fourth Amendment. *Id.* However, the Fifth Circuit has held that an exception to the general rule exists:

> where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character. The property is then seizable under the plain view doctrine.

*Id.* quoting *U.S. v. Bills*, 555 F.2d 1250, 51 (5th Cir. 1977).[3] The "plain view" or "plain smell"[4] doctrine recognizes that in the course of searching for items described in the search warrant, police may come upon contraband or other evidence of a crime. Rather than require the police to ignore the discovery or to seek another warrant specifically describing the new items, they are permitted to seize them at that time, provided that three requirements are met: (1) the officers

---

[3] *See also Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (holding that in certain circumstances a warrantless seizure by police of an item that comes within plain view during their lawful search of a private area may be reasonable under the Fourth Amendment.).

[4] *U.S. v. Pierre*, 958 F.2d 1304, 1310 (5th Cir. 1992). *See also U.S. v. Marshall*, 878 F.2d 151, 163 (5th Cir. 1989) (noting that "once the officer detected the odor of marijuana, probable cause existed to search the vehicle.").

lawfully entered the area where the items could be plainly viewed; (2) the incriminating nature of the items was immediately apparent; and (3) the officers had a lawful right of access to the items. *U.S. v. Waldrop*, at 368 citing *Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

As for the first element, the Court notes that it is uncontested that the officers were lawfully inside Defendant's residence at the time of the discovery of the illegal narcotics, and, therefore, the first requirement of the plain view exception is met.

Regarding the second element, the Fifth Circuit has held that "the incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or contraband. Probable cause does not require certainty." *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1996). "In reviewing probable cause determinations the Court must consider the totality of the circumstances— including the officers' training and experience as well as their knowledge of the situation at hand." *Id.* As mentioned *supra*, the Court heard testimony from Officer Morris, the commander of the operation, who testified that he has had over twenty years of experience in his field. Officer Morris testified that he smelled marijuana in the kitchen. Therefore, the Court finds that the presence of marijuana was immediately apparent, and, thus, the officers had probable cause to believe that contraband was contained in the area. As such, the Court finds

that the Government has set forth sufficient evidence to satisfy the second prong of the plain view analysis.[5] Lastly, for the reasons stated, *supra*, the Court also finds that the officers had a lawful right of access to the narcotics, and, therefore, the third element of the plain view exception is met.

Moreover, in addition to the Court's finding that the narcotics were lawfully seized pursuant to the plain view doctrine, the Court also finds that the narcotics were lawfully seized in the course of the officers' execution of the search warrant. As mentioned *supra*, the Court heard testimony from Officer Morris, the commander of the operation, who testified that he has over twenty years of experience in his field, and, as part of his training and experience, knows that

---

[5] The Court notes that Defendant relied on the Supreme Court case, *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149 (1987). The issue in *Hicks* was whether the plain view doctrine "may be invoked when the police have less than probable cause to believe that the item in question is evidence of a crime or is contraband." *Id.*, at 323.

In *Hicks*, a police officer responded to a shooting (the bullet originated in the defendant's apartment), by entering the defendant's apartment to search for a shooter, other victims, or weapons, without a warrant, pursuant to the exigent circumstances exception to the warrant requirement. *Id.* In addition to finding three weapons, the officer noticed expensive stereo equipment located in the "squalid" apartment. *Id.* The officer suspected that the stereo equipment was stolen, and recorded the serial numbers by moving some of the equipment. *Id.* After calling his headquarters, he learned that some of the equipment was reported stolen, and seized it. *Id.*, at 324. The defendant filed a motion to suppress the evidence that had been seized.

The Supreme Court held that: 1) the mere recording of serial numbers did not constitute a seizure; 2) the officer's moving of the equipment constituted a search separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of his entry into the apartment; and 3) for the search to have been reasonable pursuant to the Fourth Amendment and the plain view doctrine, the officer must show that he had probable cause to believe that the equipment was stolen. *Id.*, at 328.

This Court notes that the present case is easily distinguishable from *Hicks*, as the officers involved in the execution of the search warrant at issue in this case had probable cause to believe that the garbage bag and lunch box were being used to conceal, *inter alia*, the firearm described in the search warrant, fruits of an aggravated burglary, or marijuana (given the fact that Officer Morris testified that he *smelled* marijuana).

firearms and other contraband are oftentimes intentionally hidden from the naked eye.[6] He further testified that, although there were several firearms that were in plain view on the counter top (including the one later determined to have been the firearm described in the search warrant), the search warrant did not include a serial number for the firearm at issue, and, therefore, the officers conducting the search did not know *with absolute certainty* that the firearm they retrieved was the same one described in the search warrant. The Government asserted (in its post-hearing brief, and re-urged at the December 19th hearing) that:

> persons who deal in illegal narcotics often use a variety of devices to discourage others from locating and taking their products, equipment (scales, etc.), monetary proceeds, and inventory (illegal drugs). They often employ various deterrents, e.g., firearms, booby-traps, reptiles, e.g., snakes and the like to safeguard their inventory. It was, indeed, the epitome of good police work, whether on the part of SWAT or the deputies who participated in the search, to have checked the plastic bags and the lunch-type pouch, both of which could have contained a firearm of the type called for in the search warrant application.

(Doc. 28, pp 2-3). The Court agrees and finds that the officer's act of opening of the garbage bag and the lunch box during their search for the firearm described in the warrant was within the scope of the warrant, and, thus, constitutional.

---

[6] In its post-hearing brief, the Government alleged that "numerous other firearms were located in the defendant's residence; it therefore should not be considered so strange that there could be additional firearms, even additional firearms equipped with orange sights, present inside the residence. As was also noted during the hearing, numerous firearms located during the search were not included in the instant Indictment." (Doc. 28, p. 4).

7

Accordingly, the Court concludes that the officers' discovery and seizure of the narcotics in Defendant's residence was not a violation of his constitutional rights, and, therefore, Defendant's motion to suppress should be denied.

## CONCLUSION

For the foregoing reasons, the motion to suppress (doc. 16), filed by Defendant, is hereby **DENIED**.

Baton Rouge, Louisiana, January 10, 2012.

												BRIAN A. JACKSON, CHIEF JUDGE
												UNITED STATES DISTRICT COURT
												MIDDLE DISTRICT OF LOUISIANA